# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
www.flsb.uscourts.gov

In re:

**FLORIDA GAMING CENTERS, INC.**, *et al.,* [1]

          Debtor.

_____/

**FLORIDA GAMING CENTERS, INC.**, etc., *et al.,*

          Plaintiffs,

v.

**ABC FUNDING, LLC**, as Administrative Agent,

          Defendant.

_____/

**Case No.:  13-29597-RAM**
(Jointly Administered)
Chapter 11


**Adv. Case No. 13-01816-RAM**


### DEFENDANT/COUNTER-PLAINTIFF ABC FUNDING, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS/COUNTER-DEFENDANTS FLORIDA GAMING CENTERS, INC. AND FLORIDA GAMING CORPORATION'S  AMENDED COMPLAINT AND COUNTERCLAIM

### ANSWER

      Defendant/Counter-Plaintiff ABC Funding, LLC ("**ABC**"), as Administrative Agent

under the Credit Agreement (as defined below), by and through its attorneys, answers the

allegations in the Amended Complaint Against ABC Funding, LLC, as Administrative Agent

("**Complaint**"), filed by Plaintiffs/Counter-Defendants Florida Gaming Centers, Inc.

("**Gaming**") and Florida Gaming Corporation ("**Holdings**") (together, "**Plaintiffs**")[2] on or about

November 8, 2013, as amended on December [19], 2013, as follows:

---

[1] The debtors in these chapter 11 cases (the "<u>Cases</u>"), along with the last four digits of each debtor's tax identification number are: Florida Gaming Centers, Inc. (5893) ("<u>Centers</u>"), Florida Gaming Corporation (0533), Tara  Club Estates, Inc. (9545), and Freedom Holding, Inc. (4929) (collectively, the "<u>Debtors</u>").

[2] Unless otherwise indicated, all capitalized terms used herein shall have the same meaning as in the Complaint.

**P<small>RELIMINARY</small> S<small>TATEMENT</small>**

1.      Miami Jai-Alai brings this action against ABC Funding for: (i) mandatory equitable subordination of the ABC Funding Warrant Claim (defined below) pursuant to Bankruptcy Code Section 510(b); (ii) usury; (iii) equitable subordination of all of ABC Funding's claims pursuant to Bankruptcy Code Section 510(c); and (iv) an objection to ABC Funding's claims.

<u>Response</u>: ABC admits that Plaintiffs purport to bring an action against ABC

for mandatory equitable subordination, usury, equitable subordination and raises an objection to

ABCs claims but denies that Plaintiffs' claims have any foundation in fact or law and denies the

remaining allegations in Paragraph 1 of the Complaint.

2.      **ABC F<small>UNDING</small>'<small>S</small> P<small>URPORTED</small> E<small>QUITY</small> I<small>NTEREST</small> M<small>UST</small> B<small>E</small> S<small>UBORDINATED</small>**. As part of a lending relationship and Credit Agreement between ABC Funding and Miami Jai-Alai discussed in more detail below, ABC Funding required that Florida Gaming Centers execute a Warrant Agreement on April 25, 2011 (the "**Warrant Agreement**"). A true and correct copy of the Warrant Agreement is attached hereto as **Exhibit "A."** Certain of the Syndicated Lenders (defined below) are the counterparties and Warrant Holders under that agreement. Upon information and belief, the Warrant Holders are Defendants (i) Summit Partners Subordinated Debt Fund IV-A, L.P.; (ii) Summit Partners Subordinated Debt Fund IV-B, L.P.; (iii) FS Investment Corporation; and (iv) Canyon Value Realization Fund, L.P. (the **"Warrant Holders"**).

<u>Response</u>: ABC admits that Plaintiffs, Summit Partners Subordinated Debt Fund IV-A,

L.P., Summit Partners Subordinated Debt Fund IV-B, L.P., FS Investment Corporation, Canyon

Value Realization Fund, L.P., and Holdings entered into and executed the Warrant Agreement on

or about April 25, 2011. ABC admits that the document attached as Exhibit A to the Complaint

is a copy of the Warrant Agreement. ABC denies the remaining allegations in Paragraph 2 of the

Complaint.

3.      Pursuant to the Warrant Agreement, a "trigger event" occurred when Florida Gaming Centers negotiated an agreement for the sale of substantially all its assets. The trigger event required a valuation of Miami Jai-Alai in order to determine the repurchase price of the Warrants. The ultimate valuation report valued Miami Jai-Alai at over $180 million. Thus, under the terms of the Warrant Agreement, the Repurchase Price that would be due the Warrant Holders was approximately $26,845,000 as later increased due to the opening of Hialeah Park Casino, the "**ABC Funding Warrant Claim**."

2

Response: ABC admits that the Warrant Agreement includes a definition for "Trigger Event."  ABC admits that a determination of "Net Company Value" by the "Selected Investment Bank" was required by the Warrant Agreement in connection with the occurrence of a "Trigger Event".  ABC denies the allegations of Paragraph 3 to the extent they are inconsistent with the terms of the Warrant Agreement and denies the remaining allegations of Paragraph 3 of the Complaint.

4.     Because the ABC Funding Warrant Claim arises from the purchase or sale of a security of the debtor, Miami Jai-Alai seeks to subordinate the full amount pursuant to the mandates of Bankruptcy Code Section 510(b).

Response: ABC admits that Plaintiffs seek to subordinate the ABC Funding Warrant Claim but denies that Plaintiffs' claims have any foundation in fact or law and denies the remaining allegations in Paragraph 4 of the Complaint.

5.     **THE CRIMINALLY USURIOUS TRANSACTION**.  What is more, when the payments made pursuant to the Credit Agreement (defined below) are combined with the Repurchase Obligations under the Warrant Agreement, the total interest rate amounts to an astounding and criminally usurious 33% per annum.  And while ABC Funding argued in state court that the Warrant Agreement is governed by New York law and is not subject to Florida's usury laws, such an argument is readily debunked by the fact that (i) the Mortgage securing performance under the Credit Agreement also explicitly and undeniably secures the Warrant Agreement; (ii) the Warrant Agreement provides that "the validity of this Agreement and the Warrants … shall be governed by the laws of the State of Florida," and (iii) this Court can apply New York law to usury **only** if New York has a normal relation to the transaction, which is not the case here since neither ABC Funding nor the Lenders have the requisite connection to New York.

Response: ABC admits that New York law applies and that it has so argued.  ABC denies the remaining allegations contained in Paragraph 5 of the Complaint.

6.     **ABC FUNDING'S INEQUITABLE CONDUCT**.  In addition, to the foregoing, Miami Jai-Alai brings this action to preserve the rights and interests of all stakeholders and parties in interest in the face of a purposeful, unlawful, and inequitable scheme by ABC Funding to acquire Florida Gaming Center's assets through the mechanism of a "loan to own" Credit Agreement between Miami Jai-Alai and ABC Funding (as administrative agent for the Lenders).

Response: ABC denies the allegations contained in Paragraph 6 of the Complaint.

7.     ABC Funding crafted and managed the "loan" to ensure that Miami Jai-Alai would default quickly and that ABC Funding would own and/or control the valuable Casino. The Credit Agreement, when combined with the Warrant Agreement, provided ABC Funding a clear path to ultimately wrest control of the Miami Jai-Alai Casino from its owners and a vehicle through which ABC Funding could charge criminally usurious interest rates.

Response: ABC denies the allegations of Paragraph 7 of the Complaint.

8.     The Credit Agreement, the Warrant Agreement, ABC Funding's Warrant Claim, and ABC Funding's pre-contractual conduct as discussed in detail below, form the basis for a judgment in favor of Miami Jai-Alai for:  (i) mandatory subordination of the ABC Funding Warrant Claim to a level equal to common stock of Florida Gaming Corp. pursuant to Bankruptcy Code Section 510(b); (ii) a declaratory judgment that the amounts due under the Credit Agreement, in conjunction with the repurchase price of the Warrants pursuant to the Warrant Agreement exceed 25% in violation of Florida law and constitute criminal usury, thereby rendering the entire Credit Agreement and Warrant Agreement void *ab initio*; and (iii) equitable subordination of the ABC Funding's claims pursuant to Section 510(c).

Response: ABC denies the allegations of Paragraph 8 of the Complaint.

9.     In short, entry of the relief sought herein will have a profound impact on the contours of the contemplated asset sale and recoveries in these proceedings, and will fundamentally and rightly alter a *status quo* in which ABC Funding's Warrant Claim and other claims are presumed to dominate over unsecured claims, wrongly disenfranchising and usurping unsecured creditors.

Response: ABC admits that entry of the relief sought in the Complaint would have a

profound and wrongful impact on the contours of the contemplated asset sale and recoveries in

these proceedings.  ABC denies the remaining allegations contained in Paragraph 9 of the

Complaint.

10.     **OBJECTION TO ABC FUNDING'S ALLEGED CLAIMS**.  In addition, Miami Jai-Alai objects to ABC Funding's claims pursuant to this Court's *Final Order Granting Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to Use Cash Collateral; (II) Granting Adequate Protections; and (III) Granting Other Related Relief* entered in the main case on October 28, 2013 (Main Case ECF No. 201) (the **"Final Cash Collateral Order"**).

Response: ABC is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 10 of the Complaint.

11.     Among other things, Miami Jai-Alai objects to the reasonableness and permissibility of the professional fees, early termination fees and other components of ABC

Funding's purported Prepetition Obligations and/or the Prepetition Liens (as defined in the Final Cash Collateral Order). In addition to being usurious and subject to subordination as set forth herein, ABC Funding's claims and the Prepetition Obligations must be disallowed. Miami Jai-Alai demands strict proof of the allowability, validity, extent, priority, full secured status, amount, and perfection of the mortgage, security interests, and liens comprising ABC Funding's prepetition claims.

Response: ABC is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in the first and last sentences of Paragraph 11 of the Complaint.

ABC denies the remaining allegations contained in Paragraph 11 of the Complaint.

### JURISDICTION AND VENUE

12.    This Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b)(2)(A)and (O), and because this adversary proceeding arises in and is related to the case styled as *In re Florida Gaming Centers, Inc., et al.*, Case No. 13-29597-RAM currently pending in the United States Bankruptcy Court, Southern District of Florida, Miami Division.

Response: ABC admits that jurisdiction is proper in this Court for the allegations in the

Complaint. ABC denies the remaining allegations of Paragraph 12.

13.    Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409(a).

Response: ABC admits that venue is proper in this Court for the allegations in the

Complaint.

### PROCEDURAL BACKGROUND

14.    On August 19, 2013 (the "**Petition Date**"), Miami Jai-Alai commenced these cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Miami Jai-Alai continues to operate its business and manage its property as a debtor-in-possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.

Response: ABC admits that the bankruptcy cases were commenced on August 19, 2013.

ABC is without knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in Paragraph 14 of the Complaint.

15.    On September 9, 2013, the Office of the United States Trustee appointed the Joint Committee of Creditors Holding Unsecured Claims (ECF No. 90) as to debtors Florida Gaming Centers, Inc., Case No. 13-29597-RAM, and Florida Gaming Corporation, Case No. 13-29598-RAM.

<u>Response</u>: Admitted.

### <u>THE PARTIES</u>

16.     Florida Gaming Centers is a Florida Corporation with its principal place of business in Miami-Dade County, Florida.  Florida Gaming Centers owns and operates a pari-mutuel gaming facility in Miami-Dade County, Florida known as Casino Miami Jai-Alai (the **"Casino"**).

<u>Response</u>: ABC is without knowledge or information sufficient to form a belief as to the

principal place of business of Gaming.  Upon information and belief, ABC admits the remaining

allegations in Paragraph 16 of the Complaint.

17.     Florida Gaming Corp. is a Delaware Corporation with its principal place of business in Indiana and is the sole parent company of Florida Gaming Centers.  Florida Gaming Corp. is a publicly owned company.

<u>Response</u>: ABC is without knowledge or information sufficient to form a belief as to the

principal place of business of Holdings.  Upon information and belief, ABC admits the

remaining allegations in Paragraph 17 of the Complaint.

18.     Defendant ABC Funding is a Delaware limited liability company, organized and existing under the laws of Delaware.  ABC Funding serves as the administrative agent for each of the Prepetition Lenders below and administers the Lenders' rights, duties and obligations under the Credit Agreement.

<u>Response</u>: ABC admits that ABC is named by Plaintiffs as a "Defendant" in this action.

ABC admits that ABC is a Delaware Limited Liability Company.  ABC admits that it is the

Administrative Agent under the Credit Agreement.  ABC denies the allegations of Paragraph 18

to the extent they are inconsistent with the terms of the Credit Agreement and denies the

remaining allegations of Paragraph 18 of the Complaint.

19.     Summit Partners Subordinated Debt Fund IV-A, L.P. is a Delaware limited partnership, organized and existing under the laws of Delaware.

<u>Response</u>: Admitted.

20.     Summit Partners Subordinated Debt Fund IV-B, L.P. is a Delaware limited partnership, organized and existing under the laws of Delaware.

Response: Admitted.

21.     FS Investment Corporation is a Maryland corporation organized and existing under the laws of Maryland.

Response: Admitted.

22.     Canyon Value Realization Fund, L.P. is a Delaware limited partnership, organized and existing under the laws of Delaware.

Response: Admitted.

23.     JPMorgan Chase Bank, N.A. is a national banking association, organized and existing under the laws of the United States.

Response: Admitted.

24.     Locust Street Funding LLC is a Delaware limited liability company, organized and existing under the laws of Delaware.

Response: Admitted.

25.     Canyon Value Realization Master Fund, L.P. is a Cayman Island limited partnership, organized and existing under the laws of the Cayman Islands.

Response: Admitted.

26.     Canyon Distressed Opportunity Master Fund, L.P. is a Cayman Island limited partnership, organized and existing under the laws of the Cayman Islands.

Response: Admitted.

27.     Canyon-GRF Master Fund II, L.P. is a Cayman Island limited partnership, organized and existing under the laws of the Cayman Islands.

Response: Admitted.

For ease of reference, below is a chart showing the Syndicated Lenders, the original Lenders under the Credit Agreement, and the Warrant Holders.

| SYNDICATED LENDERS | ORIGINAL LENDERS UNDER THE CREDIT AGREEMENT | WARRANT HOLDERS (AND DEFENDANTS HEREIN) |
|---|---|---|
| Summit Partners Subordinated Debt Fund IV-A, L.P. | Summit Partners Subordinated Debt Fund IV-A, L.P. | Summit Partners Subordinated Debt Fund IV-A, L.P. (12.39349% allocation) |
| Summit Partners Subordinated Debt Fund IV-B, L.P. | Summit Partners Subordinated Debt Fund IV-B, L.P. | Summit Partners Subordinated Debt Fund IV-B, L.P. (5.30766% allocation) |
| Canyon Value Realization Fund, L.P. | Canyon Value Realization Fund, L.P | Canyon Value Realization Fund, L.P (8.045998% allocation) |
| JP Morgan Chase Bank, N.A. | FS Investment Corporation | FS Investment Corporation (9.25287% allocation) |
| Locust Street Funding, LLC | | |
| Canyon Value Realization Master Fund, L.P. | | |
| Canyon Distressed Opportunity Master Fund, L.P. | | |
| Canyon-GRF Masterfund II, L.P. | | |

<u>Response</u>: ABC admits that the chart provided in Paragraph 28 purports to show the Syndicated Lenders, original Lenders under the Credit Agreement, and the Warrant Holders, but denies that the chart is accurate, because it incorrectly omits J.P. Morgan Securities LLC as a Warrant Holder.  ABC denies the allegations of Paragraph 28 to the extent they are inconsistent with the terms of the Credit Agreement and Warrant Agreement and denies the remaining allegations of Paragraph 28 of the Complaint.

## STATEMENT OF FACTS

### A.   GENERAL OVERVIEW

28.   **ABOUT MIAMI-JAI**.  Miami Jai-Alai is operated by Florida Gaming Centers, which in turn, is 100% owned by Florida Gaming Corp., a corporation organized under the laws of the state of Delaware.  Florida Gaming Corp. is a public company registered with the United States Securities and Exchange Commission.  Miami Jai-Alai's principal business is owning jai-alai frontons – courts where jai-alai is played – with simulcasting operations in Miami and Ft. Pierce, Florida.  It is one of the largest, if not the largest jai-alai operator in the world.

Response: ABC admits the allegations of the first two sentences of Paragraph 29 of the Complaint.  ABC is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 29 of the Complaint.

29.      Up until January 2012, Miami Jai-Alai's activities were limited to conducting live jai alai performances, limited poker games and simulcasting various other pari-mutuel events.

Response: ABC is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30 of the Complaint.

30.      In 2010, the Florida Legislature passed a law allowing the voters in Miami-Dade County to vote on whether to allow slot machines and certain table games at existing pari-mutuel locations in Miami-Dade County.  That measure passed overwhelmingly, thus allowing Miami Jai-Alai to offer to the public slots and certain table games, including blackjack and poker.  Accordingly, Miami Jai-Alai needed additional financing to renovate their premises and retrofit certain areas to serve as a casino.

Response: ABC admits that Florida law changed, thus allowing Miami Jai Alai to offer the public slots and certain table games.  ABC is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 31 of the Complaint.

31.      Due to a decline in the jai-alai industry and the need to bring in additional cash flow to the Miami jai-alai fronton, using loans from the Syndicated Credit Facility (as defined below) Miami Jai-Alai opened *Casino Miami Jai-Alai* in January 2012.  The addition includes a 60,000 square foot state of the art casino with 1058 Class III slot machines, an expanded poker room, electronic blackjack, roulette, dominoes, live shows such as concerts and boxing, a new restaurant and three full-service bars.

Response: ABC is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 of the Complaint.

32.      Miami Jai-Alai continues to operate a fronton in Ft. Pierce, Florida and owns an inactive jai-alai permit for Tampa, Florida.  The Ft. Pierce location provides inter-track wagering on interstate simulcasting of horse racing, dog racing, and jai-alai from various tracks and frontons in the United States and within the state of Florida.

Response: ABC is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 33 of the Complaint.

33.    Collectively, Miami Jai-Alai employs approximately 500 full-time and part-time hourly and salaried employees.

Response: ABC is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 34 of the Complaint.

### B.    THE PRE-PETITION LOAN AND WARRANT AGREEMENT

34.    **THE SYNDICATED CREDIT FACILITY**.  On April 25, 2011, Florida Gaming Corp. and Florida Gaming Centers entered into a Credit Agreement (the "**Credit Agreement**") with a syndicate of unaffiliated third party lenders, Summit Partners Subordinated Debt Fund IV-A, L.P., Summit Partners Subordinated Debt Fund IV-B, L.P., FS Investment Corporation, and Canyon Value Realization Fund, L.P. (collectively, the "**Syndicated Lenders**[3]"), and ABC Funding, LLC, as administrative agent for the Lenders.  A true and correct copy of the Credit Agreement is attached hereto as **Exhibit "B."**

Response: ABC admits that the Credit Agreement, including exhibits, is attached as

Exhibit B.  ABC denies the allegations of Paragraph 35 to the extent they are inconsistent with

the Credi`t Agreement.  ABC admits that the Plaintiffs refer to Summit Partners Subordinated

Debt Fund IV-A, L.P., Summit Partners Subordinated Debt Fund IV-B, L.P., FS Investment

Corporation, and Canyon Value Realization Fund, L.P. as "Syndicated Lenders" in the

Complaint.  ABC is without knowledge or information sufficient to form a belief as to the truth

of the remaining allegations contained in Paragraph 35 of the Complaint.

35.    Pursuant to the Credit Agreement, the Syndicated Lenders agreed to make revolving loans available to Florida Gaming Centers up to $87,000,000 (the "**Syndicated Credit Facility**") to be used by Florida Gaming Centers to pay off existing debt of Miami Jai-Alai, fund the casino project at the Miami Jai-Alai fronton and for working capital.

---

[3] The "Syndicated Lenders" shall be limited to only those entities comprising the syndicate of third party lenders that are parties to the Credit Agreement as of the Petition Date, which upon information and belief, includes: Summit Partners Subordinated Debt Fund IV-A, L.P., Summit Partners Subordinated Debt Fund IV-B, L.P., Canyon Value Realization Fund, L.P., Canyon Value Realization Mast Fund, L.P., FS Investment Corporation, Canyon Distressed Opportunity Master Fund, L.P., Canyon-GRF Master Fund II, L.P., Locust Street Funding LLC, and JPMorgan Chase Bank, N.A.

Response: ABC denies the allegations contained in Paragraph 36 of the Complaint to the extent that they are inconsistent with the terms of the Credit Agreement.  ABC is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 36 of the Complaint.

36.    Florida Gaming Corp. and certain of its affiliates are guarantors of the Syndicated Credit Facility under the Credit Agreement.  The Syndicated Credit Facility is allegedly secured by first priority liens and security interests (subject only to certain mortgage liens granted in favor of Miami-Dade County) granted by Miami Jai-Alai and certain affiliates of Miami Jai-Alai to ABC Funding, including, but not limited to, all accounts, chattel paper, commercial tort claims, documents, equipment, goods, general intangibles, instruments, inventory, investment property, pledged deposits, letter-of-credit rights and supporting obligations and the real property in Ft.  Pierce and Miami.

Response:  ABC admits that the Credit Agreement is secured, *inter alia*, by first priority liens and security interests granted by Plaintiffs, including, but not limited to, security interests in all accounts, chattel paper, commercial tort claims, documents, equipment, goods, general intangibles, instruments, inventory, investment property, pledged deposits, letter-of-credit rights and supporting obligations and the real property in Ft.  Pierce and Miami.  ABC is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 37 of the Complaint.

## C.    THE FLORIDA FORECLOSURE SUIT

37.    On September 5, 2012, ABC Funding filed a Complaint in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida seeking to foreclose the subject mortgage, styled as *ABC Funding, LLC, et al. v. Florida Gaming Centers, Inc., et al.*, Case No. 12-35064 CA 58.

Response: Admitted.

38.    On that same day, ABC Funding also initiated a foreclosure action against Miami Jai-Alai in the Circuit Court of the 19th Judicial Circuit in and for St. Lucie County, Florida, styled as *ABC Funding, LLC, et al. v. Florida Gaming Centers, Inc., et al.*, Case No. 56-2012-CA-003525 AXXXHC.  The St. Lucie matter was later transferred to and consolidated with the Miami-Dade matter on May 8, 2013, and was being heard as one case in the Circuit Court of

Miami-Dade County by the Honorable Beatrice Butchko (the **"ABC Florida Action"**) as of the Petition Date.

Response: Admitted.

39. **THE SILVERMARK TRANSACTION**.  Around the same time that ABC Funding initiated the ABC Florida Action, Florida Gaming Centers was able to negotiate an agreement for the sale of substantially all its assets to Silvermark, LLC (**"Silvermark"**) for $114 million in cash and approximately $15 million in assumed liabilities.  In short, enough to pay ABC Funding's secured claim in full.  Due to ABC Funding's delay tactics as set forth in more detail herein, that deal never closed.

Response: ABC is without knowledge or information sufficient to form a belief as to the

truth of the allegations of the first sentence contained in Paragraph 40 of the Complaint.  ABC

denies the remaining allegations contained in Paragraph 40 of the Complaint.

40. **A "TRIGGER EVENT" UNDER THE WARRANT AGREEMENT**.  The Warrant Agreement required Florida Gaming Centers to pay a repurchase price should certain trigger events arise, including the sale of all the assets to a third party, such as Silvermark.  Under the terms of the Warrant Agreement, if the parties cannot agree to a valuation for that Repurchase Price, an investment bank must then be designated to determine the Repurchase Price in the event of a sale of all of the Company (Florida Gaming Centers) assets:

> *Selected Investment Bank* means an investment bank, selected by ABC Funding, as Administrative Agent under the Credit Agreement, and reasonably acceptable to the Company [Florida Gaming Centers].  If the investment bank selected by the Administrative Agent is not reasonably acceptable to the Company, and the Administrative Agent and the Company cannot agree on a mutually acceptable investment bank within ten days of the Company being informed of that selection, then the Administrative Agent and the Company shall each choose one investment bank within the next ten days and the respective chosen firms shall jointly select a third investment bank within ten days of the selection of the second such firm (*provided* that if either party shall fail to designate an investment bank within such ten day period, then the investment bank that was designated by one of the parties shall be the Selected Investment Bank), which shall make the determination.  Any investment bank selected [under the Warrant Agreement] shall be an independent investment bank of nationally recognized standing and have experience in the valuation of companies similar to the Company.

*See* Section 1(b), pages 5-6 of Warrant Agreement.

<u>Response</u>: ABC admits that the Warrant Agreement includes a definition for "Selected Investment Bank."  ABC denies the allegations of Paragraph 41 to the extent they are inconsistent with the Warrant Agreement.  ABC is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 41 of the Complaint.

41.    After a protracted battle with ABC Funding, including a full day of mediation, Miami Jai-Alai and ABC Funding's investment bankers jointly selected Jefferies, LLC to serve as the Selected Investment Bank to provide services to Miami Jai-Alai, including, without limitation, valuation services and reports as required under the terms of the Warrant Agreement.

<u>Response</u>: ABC admits that Jefferies, LLC served as the Selected Investment Bank under the Warrant Agreement.  ABC denies the allegations of Paragraph 42 to the extent they are inconsistent with the Warrant Agreement.  ABC denies the remaining allegations contained in Paragraph 42 of the Complaint.

42.    Jefferies ultimately issued its valuation report, valuing Miami Jai-Alai at ***over $180 million***.  As set forth above, the appraisal meant that the Repurchase Price that would be due the Warrant Holders was approximately $26,845,000.

<u>Response</u>: ABC denies the allegations of Paragraph 43 to the extent they are inconsistent with the Warrant Agreement.  ABC admits that Jefferies valued the assets in question, consistent with the Warrant Agreement, at a range of $170-190 million and that the Repurchase Price was approximately $26,845,000 at that time.  ABC is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 43 of the Complaint.

43.    In addition to the foregoing, based on its stall tactics employed in the prepetition foreclosure litigation with Miami Jai-Alai (as set forth more fully below), ABC Funding has argued that it is entitled to an additional and significant increase in Warrants by virtue of a nearby competitor, Hialeah Race Track Casino, beginning slot operations, which occurred on or about August 14, 2013.  This may entitle the Warrant Holders to up to $7 million more under the Warrant Agreement.  But it would only be by virtue of ABC Funding's underhandedness that they would receive this.

Response: ABC admits that the beginning of slot operations by Hialeah Race Track

Casino, which occurred on or about August 14, 2013, entitles the Warrant Holders to

approximately $7 million more under the Warrant Agreement.  ABC denies the remaining

allegations contained in Paragraph 44 of the Complaint.

44.    **ABC FUNDING'S DELAY OF THE ABC FLORIDA ACTION**.  Despite the fact that Miami Jai-Alai had a buyer in Silvermark, ABC Funding continuously delayed the sale process in a blatant attempt to run up their ultimate pay-off in the process while simultaneously rendering it impossible to close the Silvermark transaction.

Response: ABC denies the allegations of Paragraph 45 of the Complaint.

45.    It was in ABC Funding's interest to delay the sale for at least two reasons.  First, ABC Funding charged nearly $45,000 a day in interest, or nearly $1 million a month for a total of over $10 million during the pendency of the foreclosure action alone.  During the pendency of the foreclosure action, Miami Jai-Alai actually paid that interest every month – with some agreed upon exceptions – despite being declared in default.

Response: ABC admits that Plaintiffs are required to pay interest under the terms of the

Credit Agreement and admits that Plaintiffs have made some interest payments.  ABC denies the

allegations of Paragraph 46 of the Complaint to the extent that they are inconsistent with the

terms of the Credit Agreement.  ABC denies the remaining allegations contained in Paragraph 46

of the Complaint.

46.    Second, and as noted above, by stonewalling and delaying the sale and the ABC Florida Action, ABC Funding has argued that it is entitled to an additional and significant increase in Warrants on account of Hialeah Race Track Casino beginning slot operations.  The Warrant Holders will now allege that they are entitled to up to $7 million more in Repurchase Obligations.

Response: ABC admits that the beginning of slot operations by Hialeah Race Track

Casino, which occurred on or about August 14, 2013, entitles the Warrant Holders of

approximately $7 million more under the Warrant Agreement.  ABC denies the allegations of

Paragraph 47 to the extent they are inconsistent with the Warrant Agreement.  ABC denies the

remaining allegations contained in Paragraph 44 of the Complaint.

47.    Miami Jai-Alai sought a ruling from the Florida Court that the Warrant Agreement is governed by Florida law, and, therefore, the total amount due under the Warrant Agreement, when combined with the interest payable under the Syndicated Credit Facility, may not exceed 25%.  In dollars and cents, this means that the amount due under the Warrant Agreement (the Repurchase Obligations) may not exceed between $7 to $9 million dollars.  This argument, and the calculations for amounts possibly due under the Warrant Agreement, is set forth in *Amended Emergency Motion for a Determination and Seeking Summary Judgment that Amounts Due Under the Loan Documents, Including the Warrant Agreement, May Not Exceed a 25% Interest Rate* that Miami Jai-Alai filed in the ABC Florida Action and attached hereto as **Exhibit "C,"** and incorporated herein by reference.

Response: ABC admits that the document attached as Exhibit C to the Complaint is

labeled as an "*Amended Emergency Motion for a Determination and Seeking Summary Judgment*

*that Amounts Due Under the Loan Documents, Including the Warrant Agreement, May Not*

*Exceed a 25% Interest Rate*" and was filed on May 14, 2013 in the Circuit Court of the 11th

Judicial District in and for Miami-Dade County, Florida by Plaintiffs.  ABC denies that the

Warrant Agreement is governed by Florida law.  ABC denies the remaining allegations of

Paragraph 48 of the Complaint.

48.    **MORE DELAYS:  THE ABC NEW YORK ACTION**.  Apparently unhappy with the Florida Court's assistance in obtaining a Selected Investment Banker and the idea that it may decide the usury issues, on May 20, 2013, ABC Funding filed a two-count Complaint in the Supreme Court of the State of New York seeking declaratory relief and an injunction (the **"ABC New York Action"**).  Specifically, the Complaint sought a declaratory judgment (i) declaring the Warrant Agreement valid, enforceable and not usurious; (ii) requiring Miami Jai-Alai to negotiate in good faith to designate an investment bank to determine an appraisal value pursuant to the Warrant Agreement; and (iii) to declare ABC Funding's choice of investment bank to be "qualified" under the Warrant Agreement.  A true and correct copy of the ABC New York Complaint is attached hereto as **Exhibit "D."**

Response: ABC admits that it filed a Complaint in the Supreme Court of the State of New

York on May 20, 2013, and that that Complaint sought a declaratory judgment and an injunction.

ABC admits that a copy of the May 20, 2013 Complaint is attached to this Complaint as Exhibit

D.  ABC denies the allegations of Paragraph 49 to the extent they are inconsistent with Exhibit

D.  ABC denies the remaining allegations of Paragraph 49 of the Complaint.

49.     ABC Funding, as administrative agent to the Lenders under the Syndicated Credit Facility, has no connection or ties to New York.  Specifically, the Lenders are incorporated or have their principal place of business in Delaware and the Cayman Islands.  In a deliberate attempt to evade the Florida Court's application of Florida's usury laws, ABC Funding attempted to fragment the Credit Agreement into separate transactions by instituting the ABC New York Action and alleging that the Warrant Agreement was not part of the Credit Agreement and not subject to Florida law.

Response: ABC denies the allegations contained in Paragraph 50 of the Complaint.

50.     **EVEN MORE DELAY:  REFUSAL TO COOPERATE WITH THE SILVERMARK DEAL AND THE PAYOFF AND ESTOPPEL ISSUES.**  At one point in time, Silvermark had agreed to close the transaction to purchase substantially all of Miami Jai-Alai's assets and pay the full amount due and owing to ABC Funding under the Loan Documents, including the Repurchase Price under the Warrant Agreement and all professional fees incurred to date by ABC Funding.

Response: ABC denies the allegations of Paragraph 51 of the Complaint.

51.     On July 9, 2013, after repeated requests and a hearing on Miami Jai-Alai's *Motion to Compel ABC Funding to Provide Estoppel Letter*, a true and correct copy of which is attached hereto as **Exhibit "E,"** ABC Funding provided Florida Gaming with an estoppel letter purporting to comply with Florida Statute Section 701.04.  A true and correct copy of the estoppel letter is attached hereto as **Exhibit "F."**

Response: ABC admits that the document attached as Exhibit E to the Complaint is

labeled as a "Motion to Compel Plaintiffs to Deliver Estoppel Letter," and was filed by Plaintiffs

on July 1, 2013, in the Circuit Court of the 11th Judicial District in and for Miami-Dade County,

Florida.  ABC admits that the letter attached as Exhibit F to the Complaint is a letter regarding

"Calculation of Outstanding Principal and Interest," sent July 9, 2013 from ABC to Gaming, care

of Holdings and that it complied with Florida Statute Section 701.04.  ABC denies the

allegations of Paragraph 52 to the extent they are inconsistent with Exhibit F.  ABC denies the

remaining allegations contained in Paragraph 52 of the Complaint.

52.     Pursuant to the estoppel letter, the unpaid balance due and owing under the Loan Documents was $90,302,907.27, which included principal, interest and an anticipated payoff of July 22, 2013.  On July 11, 2013, ABC Funding sent a letter to Miami Jai-Alai setting forth the amounts allegedly due and owing – $3,126,242.97 – on account of professional fees incurred by ABC Funding.  A true and correct copy of that letter is attached hereto as **Exhibit "G."**

Response: ABC admits that the letter attached as Exhibit G to the Complaint is a letter

regarding "Calculation of Professional Fees and Expenses," sent July 11, 2013, from ABC to

Gaming, care of Holdings and that $3,126,242.97 was due and owing as of the date thereof on

account of professional fees incurred by ABC. ABC denies the allegations of Paragraph 53 to

the extent they are inconsistent with Exhibit G. ABC denies the remaining allegations contained

in Paragraph 53 of the Complaint.

### D.    ABC FUNDING'S BAD ACTS AND INEQUITABLE CONDUCT

53.    **MIAMI JAI-ALAI HIRES INNOVATION**. In order to explore financing alternatives
to retrofit the Miami Jai-Alai premises into a casino, Miami Jai-Alai hired Innovation Capital,
LLC (**"Innovation"**) to serve as their investment advisor. A copy of the October 21, 2010 letter
agreement between Innovation and Florida Gaming Centers is attached as **Exhibit "H."** As
indicated in paragraph 1 of the Agreement, Florida Gaming Centers retained Innovation as its
"exclusive financial advisor and sole placement agent" for purposes of obtaining this financing.

Response: ABC admits that the letter attached as Exhibit H to the Complaint is labeled as

an October 21, 2010 letter agreement between Innovation and Florida Gaming Centers. ABC is

without knowledge or information sufficient to form a belief as to the remaining allegations

contained in Paragraph 54 of the Complaint.

54.    **INNOVATION AND SUMMIT FUNDING**. Several funding options were made known
to Innovation during the course of its attempts to locate financing options. In addition to the
financing option presented by Summit Partners, LP, and related entities, Summit Master
Company, LLC, (collectively, the **"Summit Entities"**) and James Freeland (**"Freeland"**), the
Managing Director of the Summit Entities, Innovation also became aware of two other possible
funding sources, one with Och-Ziff Capital Management Group, LLC (**"Och-Ziff"**) and one with
Penn National Gaming, Inc. (**"Penn Gaming"**).

Response: ABC denies the allegations of Paragraph 55 of the Complaint insofar as they

relate to Freeland and the Summit Entities and are inconsistent with the Credit Agreement. ABC

is without knowledge or information sufficient to form a belief as to the truth of the remaining

allegations contained in Paragraph 55 of the Complaint.

55.     Innovation, however, failed to pursue and negotiate with either Och-Ziff or Penn Gaming to the fullest extent possible and in accordance with their fiduciary duties. Instead, and despite the fact that the Och-Ziff or Penn Gaming financing alternatives likely would have offered far better terms than the onerous, one-sided loan-to-own document presented by the Summit Entities, and instead of further exploring these other possible financing opportunities with the level of detail and thoroughness required by an investment advisor acting in a fiduciary capacity, Innovation created false "comparisons" wherein they purported to make a good faith comparison of the other financing proposals to the Summit Entities' proposal.

Response: ABC denies the allegations of Paragraph 56 of the Complaint insofar as they

relate to the Summit Entities. ABC is without knowledge or information sufficient to form a

belief as to the truth of the remaining allegations contained in Paragraph 56 of the Complaint.

56.     Further, in numerous oral and other communications made between 2009 and April 25, 2011, Innovation continued to misrepresent the true characteristics and problems with the Summit proposal and the benefits of the other proposals, including the Och-Ziff and Penn Gaming proposals.

Response: ABC denies the allegations of Paragraph 57 of the Complaint insofar as they

relate to the Summit Entities. ABC is without knowledge or information sufficient to form a

belief as to the truth of the remaining allegations contained in Paragraph 57 of the Complaint.

57.     Innovation strongly recommended the option memorialized in the Credit Agreement and repeatedly advised Miami Jai-Alai that this option was the best option for them. Innovation advised that Miami Jai-Alai should accept it and obtain funding from the Summit Entities.

Response: ABC is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 58 of the Complaint.

58.     Innovation misrepresented and concealed the true nature of all investment options (including those from Och-Ziff and Penn Gaming) to induce Miami Jai-Alai to accept financing from the Summit Entities. Miami Jai-Alai learned that Innovation had perpetrated similar schemes with Freeland when Freeland worked for Guggenheim Investment Management (**"Guggenheim"**) so that Freeland could enter into "loan-to-own" agreements and ultimately wrest control over parimutuel gaming facilities from their owners, the exact scheme Freeland attempted here.

Response: ABC denies the allegations of Paragraph 59 of the Complaint insofar as they

relate to Freeland and the Summit Entities. ABC is without knowledge or information sufficient

to form a belief as to the truth of the remaining allegations contained in Paragraph 59 of the

Complaint.

59.     As but one example, Freeland and Innovation similarly induced the owners of Jumer's Casino and Hotel (**"Jumer's"**) in Illinois to enter into a credit agreement which Freeland administered.  Jumer's had been a family owned business for years.  However, the Jumer family was eventually forced to sell the casino.  This result is the same result sought by ABC Funding in this instance.

Response: ABC denies the allegations of Paragraph 60 of the Complaint insofar as they

relate to Freeland and ABC.  ABC is without knowledge or information sufficient to form a

belief as to the truth of the remaining allegations contained in Paragraph 60 of the Complaint.

60.     To be clear, upon information and belief, ABC Funding, and its representatives, directed and colluded with the Innovation Parties in deceiving Miami Jai-Alai.

Response: ABC denies the allegations of Paragraph 61 of the Complaint.

61.     In reliance on Innovation's material misrepresentations, on April 25, 2011, Miami Jai-Alai entered into the Credit Agreement, which provided $84,000,000 in financing from the Summit Entities and other lenders, with ABC Funding, through Freeland, acting as the administrative agent for the Lenders.

Response: ABC admits that on April 25, 2011, Plaintiffs entered into a Credit Agreement

with the Lenders, the terms of which speak for themselves, and that ABC is the administrative

agent for the Lenders.  ABC denies the allegations contained in Paragraph 62 of the Complaint to

the extent they are inconsistent with the terms of the Credit Agreement, including the amount

provided thereunder, which was $87,000,000, not $84,000,000 as provided in the Complaint.

ABC denies the allegations of Paragraph 62 of the Complaint insofar as they relate to Freeland

and the Summit Entities.  ABC is without knowledge or information sufficient to form a belief as

to the truth of the remaining allegations contained in Paragraph 62 of the Complaint.

62.     The Summit proposal, as memorialized in the Credit Agreement, was and is a one-sided, "loan-to-own" agreement, designed to allow ABC Funding to call a default against Miami Jai-Alai at any time.

Response: ABC denies the allegations contained in Paragraph 63 of the Complaint.

63.     The intent of these provisions is not to ensure repayment to the lenders under the Credit Agreement.  Instead, the intent is so that Freeland, directly or through ABC Funding, can attempt to take control of Miami Jai-Alai.  Freeland has formed a new company, Fronton Holdings, and applied for a gaming license with the State of Florida Division of Parimutuel Wagering in an attempt to secure a gaming license and seize control of Miami Jai-Alai through administrative procedures, which has always been his intent.

Response: ABC admits that Fronton Holdings has been formed and has applied for a

gaming license with the State of Florida Division of Parimutuel Wagering.  ABC denies the

remaining allegations contained in Paragraph 64 of the Complaint.

64.     ABC Funding and Freeland worked in conjunction with the Innovation Parties to perpetrate this scheme.  Freeland, as the person who acts on behalf of ABC Funding with respect to the Credit Agreement, purported to accelerate the Credit Agreement by foreclosing on the loan in an attempt to wrest control over Miami Jai-Alai for his own benefit.  Indeed, no other reason exists for the formation of Fronton Holdings and applying for a gaming license.

Response: ABC denies the allegations contained in Paragraph 65 of the Complaint.

65.     **ABC FUNDING'S PURPOSEFUL EFFORTS TO HARM MIAMI JAI-ALAI**.  Despite ABC Funding's conduct, Miami Jai-Alai was able to renovate their facility and open the Casino in January 2012.  Since that time, the Casino has been extremely profitable.  However, the Summit Entities and their agent, Freeland (individually and through ABC Funding), continued to take actions to cause financial distress and claim some event of default.

Response: ABC admits that the Casino opened in January 2012.  ABC denies the

allegations of Paragraph 66 of the Complaint insofar as they relate to Freeland, the Summit

Entities, and ABC.  ABC is without knowledge or information sufficient to form a belief as to

the truth of the remaining allegations contained in Paragraph 66 of the Complaint.

66.     For example, the Summit Entities and Freeland insisted on artificial expenditures to increase the loan amount, such as demanding that Florida Gaming Centers and Florida Gaming Corp. pay for their gaming license in May 2011 rather than the due date of December 2011.  By forcing Florida Gaming Centers and Florida Gaming Corp. to obtain this license in May rather than eight months later in December (for no legitimate reason), Florida Gaming Centers and Florida Gaming Corp. lost almost $2 million, as the license sat dormant until the Casino opened in January 2012.  This financial loss contributed to the basis for ABC Funding, on behalf of the Summit Entities, accelerating the loan.

Response: ABC denies the allegations of Paragraph 67 of the Complaint.

67.     Freeland and the Summit Entities also demanded certain capital improvements, then refused to fund those improvements despite being (through ABC Funding) contractually obligated to do so under the Syndicated Credit Facility.  These acts caused the contractors to place liens on the Casino, after which, ABC Funding and the Summit Entities claimed Miami Jai-Alai to be in default because of the existence of liens even though the sole reason any such lien existed was because ABC Funding and the Summit Entities refused to fund the expenditures that they were obligated to fund.

Response: ABC admits that contractors placed liens on the property.  ABC denies the

remaining allegations contained in Paragraph 68 of the Complaint.

68.     Freeland and the Summit Entities also knew of the existence of a $1.3 million mortgage on the Casino, which would have been foreclosed upon had an interest payment not been made.  The Summit Entities and Freeland, through ABC Funding, declared Miami Jai-Alai to be in default for making the required mortgage payment even though the Credit Agreement mandates that Miami Jai-Alai keep the Casino free of any foreclosure proceedings.  Thus, Freeland/ABC Funding/Summit Entities would have declared a default regardless of the course of action Miami Jai-Alai took.

Response: ABC denies the allegations contained in Paragraph 69 of the Complaint to the

extent they are inconsistent with the terms of the Credit Agreement, including relating to the

"$1.3 million mortgage on the Casino", which was not actually a mortgage on the casino but a

personal margin loan secured by shares in Holdings owned by Freedom Holding, Inc.  ABC

denies the allegations of Paragraph 69 of the Complaint insofar as they relate to Freeland, the

Summit Entities, and ABC.  ABC is without knowledge or information sufficient to form a belief

as to the truth of the remaining allegations contained in Paragraph 69 of the Complaint.

69.     Freeland/ABC Funding/Summit Entities also demanded that interest be paid on the loan at 365 days per annum even though the agreement called for it to be calculated at 360 days; refused to allow funds to be placed in interest bearing bank accounts which resulted in substantial lost revenue; forced Miami Jai-Alai to hire an "owner's representative" during the construction of the Casino that Summit hand-picked and who reported to Summit, not Miami Jai-Alai, even though these entities paid the "owner's" representative.

Response: ABC denies the allegations contained in Paragraph 70 of the Complaint to the

extent they are inconsistent with the terms of the Credit Agreement.  ABC denies the allegations

of Paragraph 70 of the Complaint insofar as they relate to Freeland, the Summit Entities, and

ABC.  ABC is without knowledge or information sufficient to form a belief as to the truth of the

remaining allegations contained in Paragraph 70 of the Complaint.

70.      The foregoing are only examples of ABC Funding's/Summit Entities' "loan-to-own" scheme perpetrated by ABC Funding and Freeland so that they could wrest control of the Casino by constantly keeping Miami Jai-Alai in a state of default.

<u>Response</u>: ABC denies the allegations contained in Paragraph 71 of the Complaint.

### E.      THE FINAL CASH COLLATERAL ORDER

71.      The Final Cash Collateral Order – which was entered with the input and agreement of Miami Jai-Alai, ABC Funding and the Joint Committee of Creditors Holding Unsecured Claims – authorizes Miami Jai-Alai to "object to or challenge in any way the Prepetition Obligations and/or the Prepetition Liens," to seek "subordination … of any and all of the Prepetition Obligations and/or Prepetition Liens," and to "assert any claims or causes of action against the Prepetition Agent and/or the Prepetition Lenders, including but not limited to in respect of the Prepetition Obligations and/or Prepetition Liens" by no later than November 8, 2013.  See ¶ 16, Final Cash Collateral Order.

<u>Response</u>: ABC denies the allegations of Paragraph 72 of the Complaint insofar as they

are inconsistent with the Final Cash Collateral Order.  ABC is without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 72

of the Complaint.

72.      Miami Jai-Alai brings this action to exercise its right to Challenge (as defined in the Final Cash Collateral Order) ABC Funding's claims pursuant to the terms of the Final Cash Collateral Order.

<u>Response</u>: ABC denies the allegations of Paragraph 73 of the Complaint insofar as they

are inconsistent with the Final Cash Collateral Order.  ABC is without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 73

of the Complaint.

## COUNT I – OBJECTION TO ABC FUNDING'S PREPETITION CLAIMS

73.     Miami Jai-Alai adopts and alleges paragraphs 1 through 73 of this Complaint as if set forth fully herein.

<u>Response</u>: ABC incorporates by reference each and every response contained in

Paragraphs 1 through 73 of this Answer as if fully rewritten herein.

74.     Pursuant to the Final Cash Collateral Order, Miami Jai-Alai objects to ABC Funding's alleged Prepetition Obligations and Prepetition Liens, including but not limited to the reasonableness of professional fees, the permissibility of the early termination fee and other components of ABC Funding's alleged claims.

<u>Response</u>: ABC denies that Plaintiffs' objections have any foundation in fact or law.

ABC denies the remaining allegations contained in Paragraph 75 of the Complaint.

75.     In addition to being usurious and subject to subordination as set forth herein, Miami Jai-Alai objects to the allowability, validity, extent, priority, full secured status, amount, and perfection of the mortgage, security interests, and liens of ABC Funding's claims and the Prepetition Obligations and demands strict proof of ABC Funding's entitlement to its alleged claims on account of the Prepetition Obligations and/or Prepetition Liens.

<u>Response</u>: ABC denies that Plaintiffs' objections have any foundation in fact or law.

ABC denies the remaining allegations contained in Paragraph 76 of the Complaint.

WHEREFORE, Miami Jai-Alai respectfully requests that judgment be entered in its favor and against ABC Funding (i) ordering that ABC Funding's prepetition claims be disallowed; and (ii) granting such other and further relief as the Court deems just and equitable.

<u>Response</u>: ABC denies that Plaintiffs' claims have any foundation in fact or law.  ABC

denies that Plaintiffs are entitled to any relief and respectfully requests that Count I be dismissed

with prejudice.

## COUNT II – OBJECTION TO ABC FUNDING'S "PRE-PAYMENT" PREMIUM PORTION OF ITS PREPETITION CLAIM

76.     Miami Jai-Alai adopts and alleges paragraphs 1 through 73 of this Complaint as if set forth fully herein.

<u>Response</u>: ABC incorporates by reference each and every response contained in

Paragraphs 1 through 73 of this Answer as if fully rewritten herein.

77.     Miami Jai-Alai further objects to the "pre-payment premium" portion of ABC Funding's alleged prepetition claim, including without limitation the $1,744,512.23, plus interest thereon, improperly asserted by ABC Funding in connection with the alleged prepetition defaults under the Credit Agreement.

Response: ABC denies that Plaintiffs' objections have any foundation in fact or law.

ABC denies the remaining allegations contained in Paragraph 78 of the Complaint.

78.     Any payment made by Miami Jai-Alai after ABC Funding's purported acceleration of the Credit Agreement is not a "pre-payment."  Rather, the purported acceleration would only have the effect of moving forward the maturity date under the Credit Agreement, thus rendering the acceleration date as the new alleged maturity date.

Response: ABC denies that Plaintiffs' objections have any foundation in fact or law.

ABC denies the allegations contained in Paragraph 79 of the Complaint insofar as they are

inconsistent with the Credit Agreement.  ABC denies the remaining allegations contained in

Paragraph 79 of the Complaint.

79.     ABC Funding confuses the notion of its alleged right to a "pre-payment" premium with the fact that it demanded early payment by virtue of calling a default under the Credit Agreement and accelerating the maturity date thereunder.

Response: ABC denies the allegations contained in Paragraph 80 of the Complaint.

WHEREFORE, Miami Jai-Alai respectfully requests that judgment be entered in its favor and against ABC Funding (i) ordering that ABC Funding's prepetition claims be disallowed; and (ii) granting such other and further relief as the Court deems just and equitable.

Response: ABC denies that Plaintiffs' claims have any foundation in fact or law.  ABC

denies that Plaintiffs are entitled to any relief and respectfully requests that Count II be dismissed

with prejudice.

### COUNT III – OBJECTION TO ABC FUNDING'S ORIGINAL ISSUE DISCOUNT PORTION OF ITS PREPETITION CLAIM

80.     Miami Jai-Alai adopts and alleges paragraphs 1 through 73 of this Complaint as if set forth fully herein.

Response: ABC incorporates by reference each and every response contained in

Paragraphs 1 through 73 of this Answer as if fully rewritten herein.

81.    As part of the Credit Agreement, the parties executed that certain Transaction Fee Letter, dated April 25, 2011, a copy of which is attached hereto as **Exhibit "I."**

<u>Response</u>: ABC admits that the letter attached as Exhibit I to the Complaint is a copy of an April 25, 2011 letter agreement, executed by Plaintiffs and ABC and labeled the "Transaction Fee Letter."  ABC denies the allegations contained in Paragraph 82 of the Complaint to the extent they are inconsistent with the terms of Exhibit I and the Credit Agreement.  ABC is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 82 of the Complaint.

82.    The Transaction Fee Letter sets forth the operative terms and mechanics of the funding of the loans made by ABC Funding pursuant to the Credit Agreement.

<u>Response</u>: ABC denies the allegations contained in Paragraph 83 of the Complaint to the extent they are inconsistent with the terms of Exhibit I and the Credit Agreement.  ABC is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 83 of the Complaint.

83.    The Transaction Fee Letter contains an "original issue discount" of 98%, with ABC Funding "ratably sharing the 2% that is not funded based on their respective Commitments."  See Exhibit I, page 1.

<u>Response</u>: ABC denies the allegations contained in Paragraph 84 of the Complaint to the extent they are inconsistent with the terms of Exhibit I and the Credit Agreement. ABC is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 84 of the Complaint.

84.    The original issue discount is treated for all purposes (i.e., tax, accounting and bankruptcy) as interest that is amortized over the life of the loan.

<u>Response</u>: ABC denies the allegations contained in Paragraph 85 of the Complaint to the extent they are inconsistent with the terms of Exhibit I and the Credit Agreement.  ABC denies the remaining allegations contained in Paragraph 85 of the Complaint.

85.     The portion of the original issue discount that is unaccrued as of the Petition Date is deemed unmatured interest that must be disallowed under Bankruptcy Code Section 502(b)(2).

<u>Response</u>: ABC denies the allegations contained in Paragraph 86 of the Complaint to the extent they are inconsistent with the terms of Exhibit I and the Credit Agreement.  ABC denies the remaining allegations contained in paragraph 86 of the Complaint.

86.     To the extent ABC Funding's prepetition claims against Miami Jai  Alai includes any amounts purportedly due under the original issue discount, such amounts constitute unmatured interest and therefore must be disallowed.

<u>Response</u>:  ABC denies the allegations contained in Paragraph 87 of the Complaint to the extent they are inconsistent with the terms of Exhibit I and the Credit Agreement.  ABC denies the allegations contained in Paragraph 87 of the Complaint.

WHEREFORE, Miami Jai-Alai respectfully requests that judgment be entered in its favor and against ABC Funding (i) ordering that ABC Funding's prepetition claims be disallowed; and (ii) granting such other and further relief as the Court deems just and equitable.

<u>Response</u>: ABC denies that Plaintiffs' claims have any foundation in fact or law.  ABC denies that Plaintiffs are entitled to any relief and respectfully requests that Count III be dismissed with prejudice.

### COUNT IV – SUBORDINATION OF ABC FUNDING'S WARRANT CLAIM PURSUANT TO SECTION 510(B)

87.     Miami Jai-Alai adopts and alleges paragraphs 1 through 73 of this Complaint as if set forth fully herein.

<u>Response</u>: ABC incorporates by reference each and every response contained in Paragraphs 1 through 73 of this Answer as if fully rewritten herein.

88.     Pursuant to Bankruptcy Code Section 510(b) "for the purposes of distribution…a claim…for damages arising from the purchase or sale of…**a security** [of the debtor]…shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock."  11 U.S.C. § 510(b) (emphasis added).

<u>Response</u>: ABC admits that the quoted language appears in 11 U.S.C. § 510(b). ABC

denies that Plaintiffs' claims have any foundation in fact or law. ABC denies the remaining

allegations contained in Paragraph 89 of the Complaint.

89.    A warrant is included in the Bankruptcy Code's definition of "security." Section 101(49)(A)(xv) states: "The term security – includes … warrant or right to subscribe to or purchase or sell, a security …"

<u>Response</u>: ABC admits that the quoted language appears in Section 101(49)(A)(xv).

ABC denies that Plaintiffs' claims have any foundation in fact or law. ABC denies the

remaining allegations contained in Paragraph 90 of the Complaint.

90.    The ABC Funding Warrant Claim and the Repurchase Obligation arise from the purchase or sale of a security of Florida Gaming Centers.

<u>Response</u>: ABC denies that Plaintiffs' claims have any foundation in fact or law. ABC

denies the remaining allegations contained in Paragraph 91 of the Complaint.

91.    The ABC Funding Warrant Claim, arising from the Warrant Agreement, is a claim based solely on "the issuance of warrants to purchase shares of common stock…of [Florida Gaming Centers]…" *See* Whereas clause of Warrant Agreement, Exhibit A, page 1.

<u>Response</u>: ABC denies the allegations contained in Paragraph 92 of the Complaint.

92.    To the extent the ABC Funding Warrant Claim is a valid claim, it is based on the common stock of Florida Gaming Centers and is an equity interest in Florida Gaming Centers.

<u>Response</u>: ABC denies that Plaintiffs' claims have any foundation in fact or law. ABC

denies the remaining allegations contained in Paragraph 93 of the Complaint.

93.    The ABC Funding Warrant Claim is subject to mandatory subordination under Section 510(b) and must be subordinated to a level equal to the common stock of Florida Gaming Centers.

<u>Response</u>: ABC denies that Plaintiffs' claims have any foundation in fact or law. ABC

denies the remaining allegations contained in Paragraph 94 of the Complaint.

WHEREFORE, Miami Jai-Alai respectfully requests that judgment be entered in its favor and against ABC Funding, ordering that to the extent it is a valid claim, the ABC Funding

Warrant Claim is an equity interest in Florida Gaming Centers and must be subordinated to a level of equity in Florida Gaming Centers pursuant to Section 510(b); and (ii) granting such other and further relief as the Court deems just and equitable.

Response: ABC denies that Plaintiffs' claims have any foundation in fact or law.  ABC denies that Plaintiffs are entitled to any relief and respectfully requests that Count IV be dismissed with prejudice.

### COUNT V – SUBORDINATION OF ABC FUNDING'S WARRANT CLAIM TO THE LEVEL OF COMMON STOCK IN FLORIDA GAMING CORPORATION PURSUANT TO SECTION 510(B)

94.     Miami Jai-Alai adopts and alleges paragraphs 1 through 73 of this Complaint as if set forth fully herein.

Response: ABC incorporates by reference each and every response contained in Paragraphs 1 through 73 of this Answer as if fully rewritten herein.

95.     Pursuant to Bankruptcy Code Section 510(b) "for the purposes of distribution…a claim…for damages arising from the purchase or sale of…**a security** [of the debtor] **or of an affiliate of the debtor**…shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock."  11 U.S.C. § 510(b) (emphasis added).

Response: ABC admits that the quoted language appears in 11 U.S.C. § 510(b). ABC denies that Plaintiffs' claims have any foundation in fact or law.  ABC denies the remaining allegations contained in Paragraph 96 of the Complaint.

96.     A warrant is included in the Bankruptcy Code's definition of "security." Section 101(49)(A)(xv) states:  "The term security – includes … warrant or right to subscribe to or purchase or sell, a security…"

Response: ABC admits that the quoted language appears in Section 101(49)(A)(xv). ABC denies that Plaintiffs' claims have any foundation in fact or law.  ABC denies the remaining allegations contained in Paragraph 97 of the Complaint.

97.     The ABC Funding Warrant Claim and the Repurchase Obligation arise from the purchase or sale of a security of Florida Gaming Centers.

Response: ABC denies that Plaintiffs' claims have any foundation in fact or law.  ABC

denies the remaining allegations contained in Paragraph 98 of the Complaint.

98.     The ABC Funding Warrant Claim, arising from the Warrant Agreement, is a claim based solely on "the issuance of warrants to purchase shares of common stock…of [Florida Gaming Centers]…"  *See* Whereas clause of Warrant Agreement, Exhibit A, page 1.

Response: ABC denies the allegations contained in Paragraph 99 of the Complaint.

99.     To the extent the ABC Funding Warrant Claim is a valid claim, it is based on the common stock of Florida Gaming Centers and is an equity interest in Florida Gaming Centers.

Response: ABC denies that Plaintiffs' claims have any foundation in fact or law.  ABC

denies the remaining allegations contained in Paragraph 100 of the Complaint.

100.    The ABC Funding Warrant Claim is subject to mandatory subordination under Section 510(b) and must be subordinated to a level equal to the common stock of Florida Gaming Corp.

Response: ABC denies that Plaintiffs' claims have any foundation in fact or law.  ABC

denies the remaining allegations contained in Paragraph 101 of the Complaint.

WHEREFORE, Miami Jai-Alai respectfully requests that judgment be entered in its favor and against ABC Funding, ordering that to the extent it is a valid claim, the ABC Funding Warrant Claim is an equity interest in Florida Gaming Centers and must be subordinated to a level of equity in Florida Gaming Corp. pursuant to Section 510(b); and (ii) granting such other and further relief as the Court deems just and equitable.

Response: ABC denies that Plaintiffs' claims have any foundation in fact or law.  ABC

denies that Plaintiffs are entitled to any relief and respectfully requests that Count V be

dismissed with prejudice.

### COUNT VI – EQUITABLE SUBORDINATION OF ABC FUNDING'S CLAIMS PURSUANT TO SECTION 510(C)

101.    Miami Jai-Alai adopts and alleges paragraphs 1-73 of this Complaint as if set forth fully herein.

Response: ABC incorporates by reference each and every response contained in

Paragraphs 1 through 73 of this Answer as if fully rewritten herein.

102.    ABC Funding's claims in this case arise wholly from its inequitable conduct as described herein and should be subordinated to the claims of other creditors and equity holders of Miami Jai-Alai.

    Response: ABC denies the allegations contained in Paragraph 103 of the Complaint.

103.    Moreover, ABC Funding's conduct caused injury to Miami Jai-Alai's other creditors and conferred an unfair advantage on ABC Funding.

    Response: ABC denies the allegations contained in Paragraph 104 of the Complaint.

104.    Under principles of equitable subordination, all claims asserted against either Florida Gaming Centers or Florida Gaming Corp. by, on behalf of or for the benefit of ABC Funding, should be subordinated for purposes of distribution pursuant to Bankruptcy Code Sections 510(c) and 105(a).

    Response: ABC denies that Plaintiffs' claims have any foundation in fact or law.  ABC

denies the remaining allegations contained in Paragraph 105 of the Complaint.

105.    During negotiations with Florida Gaming Centers and Florida Gaming Corp. prior to entering into the Syndicated Credit Facility, ABC Funding fraudulently misrepresented that its desire in entering into the Syndicated Credit Facility was to provide financing for Miami Jai-Alai so that Miami Jai-Alai could successfully operate the Casino.  ABC Funding presented to Miami Jai-Alai erroneous, misleading and false financial revenue projections and budgets to mislead Miami Jai-Alai into believing that ABC Funding's financing plan would allow Miami Jai-Alai to operate the Casino and be successful.

    Response: ABC denies the allegations contained in Paragraph 106 of the Complaint.

106.    These representations were false and known by ABC Funding to be false when made, as ABC Funding intended at all times to induce Miami Jai-Alai into entering into the Syndicated Credit Facility, then act in bad faith so that they could declare Miami Jai-Alai to be in default, accelerate the loan balance, and take over the Casino for their own benefit.  ABC Funding, however, continually assured Miami Jai-Alai that their intention was for Miami Jai-Alai to succeed in operating the Casino when in fact, the opposite was true.

    Response: ABC denies the allegations contained in Paragraph 107 of the Complaint.

107.    ABC Funding knew their conduct was fraudulent yet induced Florida Gaming Centers and Florida Gaming Corp. to enter into the Syndicated Credit Facility under the guise that they wanted Miami Jai-Alai to succeed when at all times, they planned for Miami Jai-Alai to fail so that they could seize control over the business.  Miami Jai-Alai detrimentally and justifiably relied on these fraudulent misrepresentations in deciding to enter into the Syndicated Credit Facility.

    Response: ABC denies the allegations contained in Paragraph 108 of the Complaint.

108.    As a result of ABC Funding's fraudulently inducing Miami Jai-Alai to sign the Syndicated Credit Facility, Miami Jai-Alai has suffered severe damages by accepting a loan with a higher principal balance and higher interest rate and thus higher payments then alternative loans and financing arrangements, being forced to spend unwarranted and unnecessary sums to comply with the one-sided onerous Syndicated Credit Facility, and now being declared in default and having ABC Funding accelerate the loan balance.

Response: ABC denies the allegations contained in Paragraph 109 of the Complaint.

109.    In addition, ABC Funding's conduct as set forth above was undertaken with no regard to Miami Jai-Alai's ability to repay or for the impact that such conduct would have on other creditors of Miami Jai-Alai.  The exorbitant amounts advanced by Miami Jai-Alai on account of the Syndicated Credit Facility injured other creditors because funds that would have otherwise gone to those creditors were diverted to ABC Funding in respect of the Syndicated Credit Facility.  Those creditors did nothing to contribute to the risk of non-payment or the onerous terms of the Syndicated Credit Facility and should not be punished by ABC Funding's misconduct.

Response: ABC is without knowledge or information sufficient to form a belief as to the

conduct of the "other creditors."  ABC denies the remaining allegations contained in Paragraph

110 of the Complaint.

110.    Equitable subordination as requested herein is consistent with the provisions and purposes of the Bankruptcy Code.

Response: ABC denies that Plaintiffs' claims have any foundation in fact or law.  ABC

denies the remaining allegations contained in Paragraph 111 of the Complaint.

WHEREFORE, Miami Jai-Alai respectfully requests that (i) judgment be entered against ABC Funding ordering that its claims against Miami Jai-Alai be equitably subordinated to the claims of other creditors or denied due to ABC Funding's inequitable conduct and bad faith in negotiating, administering and foreclosing on the Syndicated Credit Facility, (ii) requiring the disgorgement of all payments and consideration received by ABC Funding on account of the Credit Agreement; (iii) and granting such other and further relief as the Court deems just and equitable.

Response: ABC denies that Plaintiffs' claims have any foundation in fact or law.  ABC

denies that Plaintiffs are entitled to any relief and respectfully requests that Count VI be

dismissed with prejudice.

**COUNT VII – USURY AND ACTION SEEKING CANCELLATION
OF ALL SUMS DUE ON USURIOUS LOAN AND RECOVERY
OF ALL PAYMENTS OF PRINCIPAL AND INTEREST ON USURIOUS
LOAN AS PROPERTY OF MIAMI JAI-ALAI'S BANKRUPTCY ESTATE
<u>PURSUANT TO 11 U.S.C. § 542</u>**

111.    Miami Jai-Alai adopts and alleges paragraphs 1-73 of this Complaint as if set forth fully herein.

<u>Response</u>: ABC incorporates by reference each and every response contained in

Paragraphs 1 through 73 of this Answer as if fully rewritten herein.

112.    ABC Funding put the Warrant Agreement at issue in the ABC Florida Action by including a count for mortgage foreclosure in its *Amended Complaint*.  Specifically, Count III of ABC Funding's *Amended Complaint* seeks to foreclose the Mortgage, which secures, *inter alia,* the Warrant Agreement.  A true and correct copy of ABC Funding's Complaint initiating the ABC Florida Action is attached hereto as **Exhibit "J."**

<u>Response</u>: ABC admits that the pleading attached as Exhibit J to the Complaint is a

correct copy of an Amended Complaint, filed by ABC in the Circuit Court of the 11th Judicial

Circuit in and for Miami-Dade County, Florida.  ABC admits that the Amended Complaint

attached as Exhibit J includes a count for mortgage foreclosure.  ABC denies the remaining

allegations contained in Paragraph 113  of the Complaint.

113.    Section 1.2(a)(iv) of the Mortgage defines the "Secured Obligations" as "[p]ayment and performance of any obligations of [Miami Jai-Alai] under the other Loan Documents…"  The Mortgage is part of, and annexed to, the Credit Agreement attached as Exhibit A hereto.

<u>Response</u>: ABC admits that the quoted language appears in Section 1.2(a)(iv) of the

Mortgage.  ABC denies the allegations contained in Paragraph 114 of the Complaint to the extent

they are inconsistent with the terms of the Credit Agreement and the Mortgage.  ABC denies the

remaining allegations contained in Paragraph 114 of the Complaint.

114.    "Loan Documents," in turn are defined in the Credit Agreement as "…the Warrant Agreement and warrants to be issued pursuant thereto…"  Page 15, Credit Agreement.

Response: ABC admits that the quoted language appears in the Credit Agreement.  ABC

denies the allegations contained in Paragraph 115 of the Complaint to the extent they are

inconsistent with the terms of the Credit Agreement and Warrant Agreement.  ABC denies the

remaining allegations contained in Paragraph 115 of the Complaint.

115.    The Warrant Agreement provides that "with respect to **_the validity of this_**
**_Agreement_** and the Warrants, the issuance of Common Stock upon exercise of the Warrants…
shall be governed by the laws of the State of Florida."

Response: ABC admits that the quoted language appears in the Warrant Agreement.

ABC denies the allegations contained in Paragraph 116 of the Complaint to the extent they are

inconsistent with the terms of the Credit Agreement and Warrant Agreement.  ABC denies the

remaining allegations contained in Paragraph 116 of the Complaint.

116.    The question of usury in connection with the terms of the Warrant Agreement
goes to the heart of the "validity of [the Warrant] Agreement and the Warrants, the issuance of
Common Stock upon exercise of the Warrants," and is therefore to be construed under Florida
law.

Response: ABC denies the allegations contained in Paragraph 117 of the Complaint.

117.    And Section 7.6 of the Mortgage, Absolute Assignment of Rents, Security
Agreement and Fixture Filing that secures the Loan Documents – including Miami Jai-Alai's
obligations thereunder – states that "[t]he creation, perfection and enforcement of the lien of this
Mortgage shall be governed by the law of the State of Florida …"

Response: ABC admits that the quoted language appears in the Mortgage, Absolute

Assignment of Rents, Security Agreement and Fixture Filing.  ABC denies the allegations

contained in Paragraph 118 of the Complaint to the extent they are inconsistent with the terms of

the Credit Agreement, the Warrant Agreement, and the Mortgage, Absolute Assignment of

Rents, Security Agreement and Fixture Filing.  ABC denies the remaining allegations contained

in Paragraph 118 of the Complaint.

118.    Miami Jai-Alai's obligations to repurchase the Warrants pursuant to the Warrant
Agreement, along with any legal issues that may be implicated by those obligations,

unquestionably fall within the ambit of "enforcement of the lien" created by the Mortgage and Loan Documents.

Response: ABC denies the allegations contained in Paragraph 119 of the Complaint to

the extent they are inconsistent with the terms of the Warrant Agreement, Mortgage, and Loan

Documents.  ABC denies the remaining allegations contained in Paragraph 119 of the

Complaint.

119.    Accordingly, Florida law governs all issues related to Miami Jai-Alai's repurchase of the warrants as set forth herein, including the statutorily prescribed maximum interest rate of 25%.

Response: ABC denies the allegations contained in Paragraph 120 of the Complaint.

120.    The Warrant Agreement is structured in such a fashion so as to guarantee the repurchase of the Warrants thereunder under any number of "Trigger Events."  The question was never if ABC Funding would receive anything on account of the Warrants, but when it would receive such value.

Response: ABC denies the allegations contained in Paragraph 121 of the Complaint to

the extent they are inconsistent with the terms of the Warrant Agreement.  ABC denies the

remaining allegations contained in Paragraph 121 of the Complaint.

121.    As but one example, a "Trigger Event" under the Warrant Agreement is "the Maturity Date."  *See, e.g.,* the "Trigger Events" set forth in Section 1, page 6 of the Warrant Agreement.

Response: ABC admits that the quoted language appears in the Warrant Agreement.

ABC denies the allegations contained in Paragraph 122 of the Complaint to the extent they are

inconsistent with the terms of the Warrant Agreement.  ABC denies the remaining allegations

contained in Paragraph 122 of the Complaint.

122.    And as noted above, another "Trigger Event" is when the Silvermark sale was approved at a Florida Gaming Corporation board of directors meeting which the principals of ABC Funding attended.

Response: ABC admits that a "Trigger Event" has occurred.  ABC denies the allegations contained in Paragraph 123 of the Complaint to the extent they are inconsistent with the terms of the Warrant Agreement.  ABC denies the remaining allegations contained in Paragraph 123 of the Complaint.

123.    There is no contingency or set of circumstances under which ABC Funding would not receive value in consideration of the Warrant Agreement.  Stated differently, ABC Funding was guaranteed to receive consideration under the Warrant Agreement.

Response: ABC denies the allegations contained in Paragraph 124 of the Complaint to the extent they are inconsistent with the terms of the Warrant Agreement.  ABC denies the remaining allegations contained in Paragraph 124 of the Complaint.

124.    The Warrant Agreement falls outside the scope of Section 687.03(4), Florida Statutes, and cannot be construed as a "contingent" arrangement.

Response: ABC denies the allegations contained in Paragraph 125 of the Complaint.

125.    Moreover, the value of the warrants do not "substantially depend … on the success of the venture in which are used the proceeds of that loan" as required under Section 687.03(4), Florida Statutes.

Response: ABC denies the allegations contained in Paragraph 126 of the Complaint.

126.    Accordingly, there is no "contingency" here that would serve to remove the repurchase obligations under the Warrant Agreement from the provisions of Florida's usury statutes.

Response: ABC denies the allegations contained in Paragraph 127 of the Complaint.

127.    As noted above, ABC Funding, as administrative agent to the Lenders under the Syndicated Credit Facility, has no connection or ties to New York.  Specifically, the Lenders are incorporated or have their principal place of business in Delaware and the Cayman Islands.  The transaction between the parties has no normal relation to New York State.

Response: ABC admits that ABC is the administrative agent for the Lenders pursuant to the Credit Agreement.  ABC denies the remaining allegations contained in Paragraph 128 of the Complaint.

128.    The total payments due under the Syndicated Credit Facility and the total amounts allegedly due under the Warrant Agreement constituted a loan of money as defined in Section 687, Florida Statutes.

<u>Response</u>: ABC denies the allegations contained in Paragraph 129 of the Complaint.

129.    There was an understanding between the parties as memorialized in the Syndicated Credit Facility and the Warrant Agreement that the money loaned would be repaid in the amount set forth therein.

<u>Response</u>: ABC denies the allegations of Paragraph 130 to the extent they are

inconsistent with the terms of the Credit Agreement and Warrant Agreement.  ABC denies the

remaining allegations contained in Paragraph 130 of the Complaint.

130.    The total amount due under the Warrant Agreement plus regular interest payments under the Syndicated Credit Facility exceeded the lawful interest rate of 25% per annum, simple interest.

<u>Response</u>: ABC denies the allegations of Paragraph 131 to the extent they are

inconsistent with the terms of the Credit Agreement and Warrant Agreement.  ABC denies the

remaining allegations contained in Paragraph 131 of the Complaint.

131.    ABC Funding harbored a corrupt or criminal intent at the time the Syndicated Credit Facility and Warrant Agreement were made to extract from Miami Jai-Alai an amount of interest that exceeded the legal rate and in fact to extract a rate that constituted criminal usury under Florida law.

<u>Response</u>: ABC denies the allegations of Paragraph 132 to the extent they are

inconsistent with the terms of the Credit Agreement and Warrant Agreement.  ABC denies the

remaining allegations contained in Paragraph 132 of the Complaint.

132.    Section 687.071(7) of the Florida Statutes provides that "[n]o extension of credit made in violation of any of the provisions of [Section 687.071(7)] shall be an enforceable debt…"

<u>Response</u>: ABC denies the allegations contained in Paragraph 133 of the Complaint.

133.    Because the effective interest rate of the Syndicated Credit Facility and Warrant Agreement exceeds the permissible rate under Section 687.071, Florida Statutes, those agreements are unenforceable.

<u>Response</u>: ABC denies the allegations contained in Paragraph 134 of the Complaint.

134.    Because the Syndicated Credit Facility and Warrant Agreement are unenforceable pursuant to Section 687.071, Florida Statutes, ABC Funding is required to forfeit all payments made by Miami Jai-Alai on account of the Syndicated Credit Facility.

<u>Response</u>: ABC denies the allegations contained in Paragraph 135 of the Complaint.

135.    Accordingly, all payments made by Miami Jai-Alai and received by ABC Funding on account of the Syndicated Credit Facility are deemed forfeited and create a debt that is property of Miami Jai-Alai's bankruptcy estate and is matured, payable on demand, or payable on order pursuant to Bankruptcy Code Section 542(b).

<u>Response</u>: ABC denies the allegations contained in Paragraph 136 of the Complaint.

136.    ABC Funding has failed to turn over or repay any of the forfeited payments made by Miami Jai-Alai and received by ABC Funding on account of the Syndicated Credit Facility.

<u>Response</u>: ABC denies the allegations contained in Paragraph 137 of the Complaint.

WHEREFORE, Miami Jai-Alai respectfully requests that judgment be entered against ABC Funding ordering (i) that the Syndicated Credit Facility is void *ab initio*; (ii) that the Warrant Agreement is void *ab initio*; (iii) that Miami Jai-Alai is entitled to an award of damages twice the actual amount of the principal and interest collected in connection with the Syndicated Credit Facility; (iv) that ABC Funding must be required to disgorge all payments and consideration received on account of the Syndicated Credit Facility because such payments are deemed forfeited; (v) that ABC Funding turn over to Miami Jai-Alai all payments made by Miami Jai-Alai and received by ABC Funding on account of the Syndicated Credit Facility; (vi) that Miami Jai-Alai is entitled to an award of its fees and costs; and (vii) such other and further relief as the Court deems just and equitable.

<u>Response</u>: ABC denies that Plaintiffs' claims have any foundation in fact or law.  ABC denies that Plaintiffs are entitled to any relief and respectfully requests that Count VII be dismissed with prejudice.

## **<u>AFFIRMATIVE DEFENSES</u>**

As its Affirmative Defenses, ABC states and alleges as follows:

### FIRST AFFIRMATIVE DEFENSE
**(Failure to State a Claim)**

The relief sought in Counts I, II, III, IV, V, VI, and VII of the Plaintiffs' Complaint should be denied for failure to state a cause of action against ABC upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
**(Estoppel)**

Plaintiffs are estopped from denying the validity and enforceability of the Credit Agreement and the Warrant Agreement.

### THIRD AFFIRMATIVE DEFENSE
**(Waiver)**

Plaintiffs have waived any right to deny the validity and enforceability of the Credit Agreement and the Warrant Agreement..

### FOURTH AFFIRMATIVE DEFENSE
**(Unclean Hands)**

Plaintiffs have acted inequitably and in bad faith and thus are barred from making the claims set forth in the Complaint by the Doctrine of Unclean Hands.

### RESERVATION OF RIGHTS

ABC reserves the right to raise additional defenses as they become known or as they may become available to ABC upon completion of discovery, investigation, or otherwise during the pendency of this case, consistent with applicable law.

**WHEREFORE**, ABC respectfully requests (i) that Counts I, II, III, IV, V, VI, and VII be dismissed with prejudice; (ii) that judgment be entered in favor of ABC thereon; (iii) that ABC be awarded its reasonable attorneys' fees and expenses; and (iv) that ABC be awarded such other relief as this Court deems just.

## COUNTERCLAIM (IN THE ALTERNATIVE)

Defendant and Counter-Plaintiff ABC Funding, LLC ("**ABC**"), as administrative agent under the Credit Agreement (as defined above), by its attorneys, brings this its Counterclaim against Plaintiffs/Counter-Defendants Florida Gaming Centers, Inc. ("**Gaming**") and Florida Gaming Corporation ("**Holdings**") (together, "**Counter-Defendant**s").  ABC brings this Counterclaim in the alternative to its Answer and Affirmative Defenses to Count VII of the Complaint as set forth above, and only in the event that Counter-Defendants prevail on any portion of Count VII of their Complaint and are thus able to reduce or to limit in any way the rights of ABC, the Lenders and the Warrant Holders under the Credit Agreement and the Warrant Agreement.  ABC therefore states as follows:

## NATURE OF THE ACTION

1.      This action arises out of the fraudulent and improper conduct of Counter-Defendants, in connection with representations and omissions made with respect to the Loan Documents, as defined above.  Through this action ABC seeks damages for fraud in the inducement.

2.      This adversary proceeding, filed November 7, 2013, arises out of and relates to the following styled Chapter 11 Bankruptcy Proceeding, *In re: Florida Gaming Centers, Inc., et al.*, Case No. 13-29597-RAM, presently pending in this Court.

3.      This Adversary Proceeding is brought pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

## THE PARTIES

4.    ABC is a Delaware limited liability company, organized and existing under the laws of Delaware.  ABC Funding serves as the Administrative Agent for the Lenders under the Credit Agreement.

5.    Upon information and belief, Gaming is a Florida corporation with its principal place of business in Miami-Dade County, Florida.

6.    Upon information and belief, Holdings is a Delaware corporation with its principal place of business in Indiana, is the parent company of Gaming, and is a publicly held company.

## GENERAL ALLEGATIONS

7.    On April 25, 2011 ABC, the Lenders, and Counter-Defendants entered into a Credit Agreement.

8.    Pursuant to Section 4.01(c) of the Credit Agreement, Counter-Defendants secured "special Florida legal counsel" at the law firm of Infante, Zumpano, Salazar & Miloch, LLC, and Luis Salazar of that law firm.

9.    This "special Florida legal counsel" delivered an opinion letter, dated April 25, 2011, to ABC and the Lenders (the "Opinion Letter") pursuant to Section 4.01(c) of the Credit Agreement.  A true and correct copy of the Opinion Letter is attached as Exhibit 1 hereto.

10.    The Opinion Letter confirmed that Counter-Defendants' counsel had examined the Credit Agreement and Warrant Agreement, among other instruments and documents.  The Opinion Letter defined "Transaction Documents" as including the Credit Agreement and Warrant Agreement, among other instruments and documents.

11.     Paragraph 5 of the Opinion Letter stated that Infante, Zumpano, Salazar & Miloch, LLC and Mr. Salazar had concluded that the Credit Agreement and the Warrant Agreements did not violate Florida usury laws.  Specifically, the Opinion Letter stated that "Each Borrowing Entity's execution, delivery and performance of the Transaction Documents to which it is a party will not violate any law, statute or regulation of the State of Florida (including, without limitation, any usury laws)."

12.     Paragraph 16 of the Opinion Letter stated that Infante, Zumpano, Salazar & Miloch, LLC and Mr. Salazar had concluded that Florida courts would apply New York usury law to the Credit Agreement and the Notes.  Specifically, the Opinion Letter stated that "The Credit Agreement and the Notes (the 'Relevant Agreements') provide that the Relevant Agreements shall be governed by the laws of the State of New York.  Based on the assumption that the Relevant Agreements have a 'normal and reasonable relation' (as such phrase has been interpreted by Florida courts) to the laws of the State of New York and although the issue is not free from doubt, it is our opinion that if the matter were presented today to a court consistent with existing authority, it is more likely than not that a Florida court (or a Federal court applying Florida choice of law rules) would conclude that the designation of the laws of State of New York as the governing law of the Relevant Documents with respect to usury laws would be upheld."

13.     On or about November 8, 2013, Counter-Defendants filed their adversary Complaint with this Court.  That Complaint contains "Count VII," a claim for usury "and action seeking cancellation of all sums due on usurious loan and recovery of all payments of principal and interest on usurious loan as property of Miami Jai-Alai's bankruptcy estate pursuant to 11 U.S.C. § 542" under Florida law.

14.     Paragraph 120 of the Complaint alleges that "Florida law governs all issues related to Miami Jai-Alai's repurchase of the warrants as set forth herein, including the statutorily prescribed maximum interest rate of 25%."

## COUNT I – FRAUD IN THE INDUCEMENT

ABC, suing Counter-Defendants for damages for fraud in the inducement, repeats and realleges the allegations contained in Paragraphs 1 through 15 above, and further alleges:

15.     This is an action for damages in excess of $85,000,000.00.

16.     Counter-Defendants entered into the Credit Agreement and the Warrant Agreement knowingly and willingly.  Counter-Defendants and their counsel, Infante, Zumpano, Salazar & Miloch LLC, and Mr. Salazar, had specific knowledge that ABC would advance funds and assume obligations on behalf of the Lenders pursuant to the Credit Agreement and the Warrant Agreement based on the representations that Counter-Defendants and their counsel, Infante, Zumpano, Salazar & Miloch LLC, and Mr. Salazar, made in connection therewith.

17.     Counter-Defendants, represented by their counsel, Infante, Zumpano, Salazar & Miloch LLC, and Mr. Salazar, represented in the Opinion Letter that Florida usury law would not apply to the Transaction Documents, including the Credit Agreement and the Warrant Agreements, and that the Transaction Documents are valid and enforceable.

18.     In Count VII of their Complaint, filed by Salazar Jackson, LLP, and Mr. Salazar, Counter-Defendants now contend that the Transaction Documents, including the Credit Agreement and Warrant Agreement, were subject to Florida usury laws and are not valid and enforceable.

19.     ABC denies that Count VII of the Complaint is well-founded in fact or law.  If, however, the Court were to rule in favor of Counter-Defendants on Count VII of the Complaint,

that ruling would also mean that Counter-Defendants, represented by their counsel, Mr. Salazar, had made fraudulent misrepresentations in the Opinion Letter to induce ABC to enter into the Transaction Documents, including the Credit Agreement and the Warrant Agreement, and to advance funds to Counter-Defendants pursuant to the Credit Agreement.

20.     If the Court were to rule in favor of Counter-Defendants on Count VII of the Complaint, that ruling would mean that Counter-Defendants, represented by their counsel, Mr. Salazar, had made false statements of material facts which they knew were false when made, and were made with the intent to induce ABC to enter into the Credit Agreement.

21.     If the Court were to rule in favor of Counter-Defendants on Count VII of the Complaint, that ruling would mean that ABC had suffered damages in justifiable reliance on Counter-Defendants and their counsel, Mr. Salazar's misrepresentations and omissions.

22.     The fraudulent misconduct of Counter-Defendants has been willful, wanton, malicious, and evidenced a total disregard for the rights and interests of ABC.  This is true no matter how the Court may rule on Count VII, as the blatant contradictions between the Opinion Letter and the allegations of Count VII of the Complaint cannot be explained by anything other than bad faith on the part of  Counter-Defendants.

WHEREFORE, in the alternative to its Answer and Affirmative Defenses to Count VII of the Complaint, ABC demands judgment against Counter-Defendants for compensatory damages, in an amount to  be determined at trial but likely to be well in excess of $85,000,000.00, plus interest and costs, and for such other and further relief as this Court deems just and proper. Moreover, ABC respectfully requests this court to retain jurisdiction to enter an award of punitive damages in a manner consistent with the dictates of § 768.72, Fla. Stat.

Dated:  December 20, 2013

Respectfully submitted,

We hereby certify that the undersigned attorney are appearing *pro hac vice* in this matter pursuant to court order dated August 22, 2013 (ECF Nos. 25 and 26, respectively).

**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile:  (312) 853-7036

By:   */s/ Dennis M. Twomey*
          DENNIS M. TWOMEY
          Illinois Bar No. 6273190
          dtwomey@sidley.com
          ANDREW F. O'NIELL
          Illinois Bar No. 6287008
          aoneill@sidley.com

          - and –

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone:     (305) 789-3200
Facsimile:     (305) 789-3395

By:   */s/ Drew M. Dillworth*
          DREW M. DILLWORTH
          ddillworth@stearnsweaver.com
          Florida Bar No. 167835
          MARISSA D. KELLEY
          mkelley@stearnsweaver.com
          Florida Bar No. 379300

*Counsel for ABC Funding, LLC, as Administrative Agent*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 20, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day by transmission of Notices of Electronic Filing ("NEF") generated by CM/ECF to Counsel for the Plaintiffs / Counter Defendants, Luis Salazar salazar@salazarjackson.com,  jackson@salazarjackson.com;  aguilar@salazarjackson.com;  Lee-Sin@SalazarJackson.com;  pacetti@salazarjackson.com, registered to receive electronic notices of filing in this case.

By:  */s/ Drew M. Dillworth*
DREW M. DILLWORTH